IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CENTER FOR BIOLOGICAL )
DIVERSITY and SIERRA CLUB, )
                              )
    Plaintiffs,                )
                              )
v.                            )   1:19-CV-1179
                              )
UNIVERSITY OF NORTH           )
CAROLINA AT CHAPEL HILL,      )
                              )
    Defendant.                )

## ORDER

Plaintiffs, Center for Biological Diversity and Sierra Club, assert that the defendant, the University of North Carolina at Chapel Hill, has repeatedly violated conditions of its permit issued under Title V of the Clean Air Act for the operation of air pollution sources on UNC's campus. UNC moves to dismiss all ten of plaintiffs' claims. Because subject matter jurisdiction exists and the plaintiffs sufficiently allege repeated violation of specific permit conditions, UNC's motion will be denied.

### I.    Motions to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Legal conclusions "must be supported by factual allegations" that amount to more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678–79.

Courts generally do not consider matters beyond the complaint when ruling on a Rule 12(b)(6) motion to dismiss. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). But a court may consider documents outside the pleadings without converting a motion to dismiss into one for summary judgment if those documents are "integral to and explicitly relied on in the complaint" and their authenticity is unchallenged. *Copeland v. Bieber*, 789 F.3d 484, 490 (4th Cir. 2015) (quoting *Phillips v. LCI Int'l.*, 190 F.3d 609, 618 (4th Cir. 1999)). Here, UNC attaches a copy of its air pollution permit, Doc. 20-1, which serves as the basis of plaintiffs' various claims. Plaintiffs have not contested the authenticity of the filed copy, and the Court will consider it without converting UNC's motion to dismiss into one for summary judgment.

## II. Citizen Suits under the Clean Air Act

In 1990, Congress amended the Clean Air Act to authorize citizen suits against any person "alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of . . . an emission standard or limitation under this chapter." 42 U.S.C. § 7604(a)(1). An "emission standard or limitation under this chapter" includes "any. . . standard, limitation, or schedule established under any permit issued . . . under any applicable State implementation plan approved by the [EPA] Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations." *Id.* § 7604(f)(4); *Nat'l Parks Conservation Ass'n. v. Tenn. Valley Auth.*, 480 F.3d 410, 418 (6th Cir. 2007).

An action alleging wholly past violations can be maintained so long as the plaintiff asserts at least two violations of the same standard, even if the violations are not ongoing.

2

*See Env't Tex. Citizen Lobby v. Exxonmobil Corp.*, 968 F.3d 357, 365 (5th Cir. 2020) ("[A] plaintiff must assert at least two violations of the same standard in order to allege a claim."); *see also United States v. Am. Elec. Power Serv. Corp.*, 137 F. Supp. 2d 1060, 1066 (S.D. Ohio 2001).

### III. Analysis and Discussion

The North Carolina Division of Air Quality issued a permit to UNC pursuant to Title V of the Clean Air Act, 42 USC § 7661c(a); 40 CFR § 70.6(a)(1). Doc. 17 at ¶¶ 21, 26. Citizen suits are authorized for violations of these permits under § 7604(a)(1). UNC's air pollution permit also states in Section 3.A.5, ". . . all terms and conditions contained herein shall be enforceable by the DAQ, the EPA, and citizens of the United States as defined in the Federal Clean Air Act." Doc. 20-1 at 58. To the extent that UNC contends that any of the plaintiffs' claims relate to permit conditions that are not "federally enforceable," *see* Doc. 20 at 29, that argument is without merit.

### A. Claim I – Violation of Heat Input Limits for Boilers 6 and 7

Section 2.1 of the permit provides "specific terms, conditions, and limitations" for various emission sources. Two such emission sources, Boiler 6 and Boiler 7, are the subjects of Section 2.1.A, which, *inter alia*, states that each boiler has a 323.17 million British Thermal Units (Btu) per hour heat input capacity. Doc. 20-1 at 15. The plaintiffs assert that UNC violated this part of the permit by repeatedly running the boilers at higher capacity than the limit specified in the permit. Doc. 17 at ¶¶ 35–36, 38. This states a claim upon which relief may be granted.

3

UNC contends that the specified heat input capacity is not an actionable limit and is instead "used simply and solely to identify the [emission] sources subject to Section 2.1.A." Doc. 20 at 10. But heat input is explicitly used in the Section 2.1.A "Limits/Standards" chart, where it is a variable in the equations that determine specific limits for regulated pollutants. *See* Doc. 20-1 at 15. UNC is correct that the heat input capacity is also included in the Section 1 description of the boilers, *see* Doc. 20-1 at 8, which is copied verbatim into Section 2.1. That copying, however, indicates that the numbers are important for determining the limits; otherwise, Section 2.1 would simply refer to the boilers by their shorthand identification numbers provided in Section 1. UNC's interpretation would thus render the language pertaining to heat input capacity for the two boilers superfluous.

## B. Claim III – Violations of Air Cleaner Inspection Requirements

Permit condition 2.1.G.3.k requires UNC to inspect the air cleaner of each of the 82 emergency generators listed in permit Section 2.1.G. Doc. 20-1 at 37–39, 42. UNC must conduct this inspection every 1000 hours of operation or annually, whichever comes first. Doc. 20-1 at 42. Failure to maintain records of these inspections is a violation of 15A N.C. Admin. Code 2D .1111 (2018). Plaintiffs' third claim alleges that UNC failed to inspect the air cleaners for any such generator from June 16, 2016 to December 31, 2016, as well as each day in 2017 and 2018. Doc. 17 at ¶ 43.

UNC moves to dismiss on three grounds. Doc. 20 at 19–23. The first is a subject matter jurisdiction argument pursuant to Rule 12(b)(1), and the other two challenge the sufficiency of the allegations under Rule 12(b)(6).

4

First, the Court has subject matter jurisdiction. It is undisputed that the complaint presents several federal questions and that there is a live controversy. UNC contends the court should abstain pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). But it is not at all clear that this case will require resolution of issues of state policy, and in any event, the case law indicates *Burford* abstention does not apply in this context. *See Chico Serv. Station, Inc. v. Sol P.R. Ltd.*, 633 F.3d 20, 29–31 (1st Cir. 2011) (declining to follow *Burford* in the context of environmental citizen suits); *Fresh Air for the Eastside, Inc. v. Waste Mgmt. of N.Y., LLC*, 405 F. Supp. 3d 408, 427, 429–30 (W.D.N.Y. 2019) (concluding that *Burford* abstention does not ordinarily apply in CAA cases); *DMJ Assocs. v. Capasso*, 228 F. Supp. 2d 223, 229 (E.D.N.Y. 2002) ("[A] number of courts have . . . [found] abstention inappropriate in citizen's suits brought under the Clean Air Act"). As subject matter jurisdiction may be challenged at any point in the proceeding, and the briefing on this point was not completely developed, the motion is denied without prejudice to renewal at summary judgment.

Second, UNC argues that the plaintiffs have not alleged necessary facts showing that inspections were required between June 16 and December 31, 2016. Doc. 20 at 19. But the plaintiffs have alleged that these inspections are required every 1000 hours of operation, Doc. 17 at ¶ 42, and the subject generators could easily have operated for 1000 hours between June 16 and December 31, 2016. The plaintiffs have sufficiently pled facts to support its claim.

Finally, UNC argues that the plaintiffs' suit is barred because Department of Environmental Quality issued a Notice of Violation to UNC in connection with the air

5

cleaner inspections. Doc. 20 at 20. Pursuant to § 7604, citizen suits are barred when an "Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State" for a violation. 42 U.S.C. § 7604(b)(1)(B). But as UNC admits, the NOV is not being litigated in a North Carolina court. Doc. 20 at 21. Indeed, it is not being litigated in any court. Many federal courts, including the Fifth Circuit, have previously refused to interpret "court of the United States or a State" to include administrative actions under § 7604. *See, e.g., Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 795 (5th Cir. 2000) ("[T]he plain meaning of 'court of the United States or a State' excludes administrative actions"). An administrative action by DEQ is not "a civil action in a court of the United Sates or a State," and a concurrent citizen suit by the plaintiffs is not barred.

## C. Claims II and IV through X

The arguments made by UNC to dismiss the remainder of plaintiffs' claims are based on the contention that the complaint does not meet the pleading requirements of *Twombly* and *Iqbal*. While *Twombly* and *Iqbal* do not allow a case to go forward with only conclusory allegations and require that a complaint "plausibly suggest an entitlement to relief," *Iqbal*, 556 U.S. at 681, those cases do not hold that a plaintiff must prove the elements of a cause of action in their pleading. *See FDIC v. Baldini*, 983 F.Supp.2d 772, 785 (S.D. W. Va. 2013). Indeed, *Twombly* explicitly states that a complaint "does not need detailed factual allegations." 550 U.S. at 555. The Court evaluates the complaint according to the standards set forth in those two cases and as explained in detail by the Fourth Circuit in *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th

Cir. 2009) and *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255–56 (4th Cir. 2009); *accord Hayes v. Self-Help Credit Union*, No. 1:13-CV-880, 2014 WL 4198412, at *2 (M.D.N.C. Aug. 22, 2014).

Here, plaintiffs have met the *Twombly/Iqbal* standard for claims II, IV, V, VI, VII, VIII, IX, and X. The plaintiffs have alleged that UNC has violated specific conditions of its air pollution permit, with identifiable fixtures and equipment, and on or within specific dates or date ranges. Additionally, plaintiffs have alleged at the outset of the complaint that "upon information and belief" UNC has "repeatedly violated" each of the specified permit conditions. Doc. 17 at ¶ 1. As such, UNC's motion to dismiss will be denied as to claims II and IV through X.

It is **ORDERED** that the defendant's motion to dismiss the first amended complaint, Doc. 19, is **DENIED**.

This the 21st day of October, 2020.

UNITED STATES DISTRICT JUDGE

7

Case 1:19-cv-01179-CCE-JLW   Document 30   Filed 10/21/20   Page 7 of 7