IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and SIERRA CLUB, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:19-CV-1179 |
| UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, | ) ) ) ) | |
| Defendant. | ) | |

## ORDER

The Court has reviewed the briefs and the evidence as to the facts material to Claims I and IX and provides the attached discussion draft to counsel for review and comment. Both parties have moved for summary judgment, indicating both parties believe the material facts are undisputed, and if that is so, the parties should be able to agree on the facts, even if they do not agree on materiality. The parties shall confer and shall, no later than July 23, 2021, file a Joint Submission that includes, in an organized format, any agreed-upon corrections, rewordings, additions, and deletions and the same for any changes to which both parties do not agree. The Joint Submission may also note but not discuss any previously expressed disagreements as to materiality and admissibility. Please avoid spin.

Every single fact in the Joint Submission must be supported by a citation to evidence using the CM-ECF docket number with a pin-cite to the page number appended by the CM-ECF system and an internal paragraph or section number if there is one.

Please use the format the Court has used in the attached draft. Any purported facts with no citation to the record will be disregarded, unless the parties explicitly agree to them.

This is not an opportunity for further argument, and none shall be included.

If one side wants to point out that a fact submitted by the other side is disputed, it may do so with a citation to the opposing evidence.

Only facts potentially material to Claims I and IX are addressed in the attached draft. No party shall include any facts in the Joint Submission that are not relevant to those claims.

It is **ORDERED** that the parties shall file a Joint Submission in the form required by this order no later than July 23, 2021.

This the 14th day of July, 2021.

_____
UNITED STATES DISTRICT JUDGE

# DRAFT UNDISPUTED FACTS
# POTENTIALLY MATERIAL TO CLAIMS I AND IX

## I. General as to both claims:

1. UNC operates numerous emission sources regulated under Title V of the Clean Air Act on its Chapel Hill campus. Doc. 42-10 at 7–13.

2. UNC's Title V facilities are currently regulated under Permit No. 03069T35 ("the Permit"), which was issued by the North Carolina Division of Air Quality on March 22, 2018. Doc. 42-10.

3. UNC has previously operated under other substantially similar Title V permits over the relevant time period:

   a. On September 10, 2014, DAQ issued UNC's Air Quality Permit No. 03069T32. Doc. 42-7.

   b. On November 9, 2015, DAQ issued UNC's Air Quality Permit No. 03069T33. Doc. 42-8.

   c. On June 16, 2016, DAQ issued UNC Air Quality Permit No. 03069T34. Doc. 42-9.

## II. Claim I:

1. UNC's Boilers 6 and 7 (ES-001 and ES-002) burn coal and other fuels to produce steam and electricity. Doc. 42-10 at 14–15.

2. Section 2.1 of the permit sets "specific terms, conditions, and limitations" for various emission sources. Doc. 40-2 at 15. Emissions from Boilers 6 and 7 are listed in this section. Doc. 40-2 at 15.

3. Specifically, Section 2.1.A, authorizes emissions from the two boilers as follows:

   Two coal/natural gas/No. 2 fuel oil/wood (non-CISWI)/torrified wood (non-CISWI)-fired, circulating fluidized combustion boilers (323.17 million Btu per hour heat input capacity each, ID Nos. ES-001-Boiler #6 and ES-002-Boiler #7, NSPS-Subpart Db) with associated bagfilters (ID Nos. CD-004 and 005).

   Doc. 40-2 at 15 (footnotes omitted). The section thereafter provides limits and standards in chart form for particulate matter, sulfur dioxide, nitrogen dioxide, hazardous air pollutants, and nitrogen oxides, Doc. 40-2 at 15–16, the specifics of which are not relevant here.

4. On December 17, 2014, UNC performed various compliance tests on Boiler 6, including one pursuant to EPA Method 30B for Mercury. Doc. 42-11 at 2.

5. On December 18, 2014, UNC performed various compliance tests on Boiler 7, including one pursuant to EPA Method 30B for Mercury. Doc. 42-11 at 2.

6. EPA Method 30B provides that the "minimum sample run time . . . for emissions testing to characterize an emission source is 1 hour." Doc. 51-4 at 2.

7. On December 17, 2014, Boiler 6's heat input was, at one point, approximately 332 mmBtu/hr. Doc. 42-11 at 1.

8. On December 18, 2014, Boiler 7's heat input was, at one point, approximately 342 mmBtu/hr. Doc. 42-11 at 1; Doc. 42-12 at 11–12.

9. Regulators at the North Carolina Division of Air Quality were aware of these heat input numbers from the Boiler tests on December 17 and December 18, 2014, and found them to be "acceptable." Doc. 42-11 at 1.

10. Boilers 6 & 7 run a heat input higher than 323.17 mmBtu/hr somewhere under 5% of the time. Doc. 42-12 at 11–12.

11. Between May 1, 2019, and March 16, 2021, UNC operated Boilers 6 and 7 for at least 269 individual hours above 323.17 mmBtu/hr. Doc. 43 at 4–7; Doc. 43-1 at 1–9; Doc. 43-2 at 4–7; Doc. 43-3 at 1–11. The evidence is not specific as to whether these values represent (1) an average rate of consumption over the course of an hour, (2) a constant amount consumed over one hour, or (3) something else.

12. UNC has not exceed the emissions limits for Boilers 6 and 7 as to particulate matter, sulfur dioxide, nitrogen dioxide, hazardous air pollutants, or nitrogen oxides during the relevant time period. [The Court understands this to be undisputed, but had difficulty locating evidence.]

13. Regulators at DAQ consider the 323.17 million Btu per hour heat input to be a descriptor of the Boilers and not an enforceable limit. Doc. 40-6 at 7-8.

14. The "current" Permit expired on March 31, 2021. Doc. 47 at p. 2, ¶ 3.

15. The DAQ has issued a draft permit to replace the Permit. Doc. 47 at p. 2, ¶ 3.

16. The DAQ has noticed its intent to hold a public hearing on May 6, 2021, in connection to UNC's permit renewal. Doc. 47 at p. 2, ¶ 4.

17. The draft permit removes from Section 2.1 any reference to the heat input capacity of Boilers 6 and 7. Doc. 47 at 27.

### III. Claim IX:

1. UNC operates an emergency diesel-fired generator (Emission Source ID No. ES-Gen-12) on its Chapel Hill campus. Doc. 47 at 58. UNC periodically tests the

readiness of its emergency generators to make certain that they will start up as needed in an emergency and operate after a period of inactivity.

2. Section 2.2.A restricts the readiness testing of ES-Gen-12 and other emergency generators:

   In order to ensure that combustion sources (emergency generators (ID Nos. ES-EG#2 1, ES-Gen-12, ES-Gen-13, ES-Gen-43, ES-Gen-48, ESGen-49, and fire water pump ES-FP-3) do not contribute to an exceedance of the 1-hour NO2 National Ambient Air Quality Standard (NAAQS); the Permittee may only operate these generators …for readiness testing when generators (ID Nos. ES-006 and ES-007) are not operating and when readiness testing is not being performed for any other emergency generator, except ES-EG#21, ES-Gen-12, ES-Gen-13, ES-Gen-43, ES-Gcn-48, ES-Gen-49, and fire water pump ES-FP-3.

   Doc. 42-10 at 48

3. On September 20, 2018, UNC ran an emergency diesel generator (No. ES-Gen-12) for readiness testing for 32 minutes during the concurrent operation of ES-006 and ES-007. Doc. 43-6 at 1.

END OF DRAFT